**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| CLARA YUVIENCO, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 23-186 (RC) |
| | : | | |
| v. | : | Re Document No.: | 5, 7 |
| | : | | |
| TOM VILSACK, | : | | |
| Secretary of Agriculture, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**GRANTING DEFENDANT'S MOTION TO DISMISS**

**I.  INTRODUCTION**

Plaintiff Clara Yuvienco brings this employment discrimination action against Tom Vilsack in his official capacity as Secretary of Agriculture.  Ms. Yuvienco alleges that she suffered employment discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") on the basis of her race and her national origin, as well as age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), and that she experienced a hostile work environment based on her race, national origin, and age.  The Secretary moves to dismiss.  For the reasons stated below, the Court GRANTS the Secretary's motion to dismiss.  But the Plaintiff is given 30 days to amend her complaint.

**II.  FACTUAL BACKGROUND**

Ms. Yuvienco is a Black woman of Colombian national origin.  Compl. ¶ 1, ECF No. 1.  She was born in 1958.  *Id.*  From at least 2014 until 2021, Ms. Yuvienco was employed by the United States Department of Agriculture as a Technical Information Specialist with the Food

Safety and Inspection Service, which is part of the Office of Public Affairs and Consumer Education.  *Id.* ¶¶ 16, 19, 25.

As far as the Court can discern, Ms. Yuvienco's claims start in April 2021, when "on several occasions" her supervisors "Roxanne Smith, Wendy Mihm, and Aaron Lavalle subjected Plaintiff to various incidents of harassment," although there are no further details or allegations about any specific actions taken by these individuals until several months later, in July 2021.[1]  *Id.* ¶¶ 17–19, 20, 22.  All three supervisors are white and of American national origin.[2]  *Id.* ¶¶ 17–19.

The core of Ms. Yuvienco's allegations is that her "manage[rs] accused [her] of not meeting her metrics, refused to provide her with her metrics, and alleged she was performing poorly."  *Id.* ¶ 28.  More specifically, on July 1, 2021, Ms. Yuvienco "was issued a Letter of Instruction by Roxanne Smith alleging that she failed to meet performance expectations."  *Id.* ¶ 20.  On August 4, 2021, Ms. Yuvienco was issued another "Letter of Instruction by Ms. Mihm regarding leave management and attendance."  *Id.* ¶ 21.  Ms. Yuvienco also received "delayed responses to [sic] and the approval of her leave requests for August 2021."  *Id.* ¶ 22.  On August 19, 2021, citing Ms. Yuvienco's purported poor performance, Ms. Mihm and Mr. Lavalle placed Ms. Yuvienco on a "Demonstration Opportunity period for thirty [] days."  *Id.* ¶¶ 23, 36.  Ms. Yuvienco's co-worker, "who in fact performed poorly, was not placed on a Demonstration Opportunity period."  *Id.* ¶ 24.  "On September 13, 2021, [Ms. Yuvienco] was forced to retire."  *Id.* ¶ 25.  The complaint pleads that Ms. Yuvienco was subject to "constructive discharge" based

---

[1] It is possible that this reference to "April 2021" is an error, and the complaint should say "August 2021", as the preceding and following allegations both concern that later month.  *See* Compl. ¶¶ 22–24.

[2] They were born in 1961, 1968, and 1980, respectively.  *See id*. ¶¶ 17–19.

on "improper discipline, accus[ations] of poor performance, delay of leave requests, and unfair assignment of work, which created a hostile and abusive work environment . . . ." *Id.* ¶¶ 34, 87.

According to Ms. Yuvienco, she was treated this way because of her membership in several protected classes. First, she alleges that these actions were taken because of her race, *id.* ¶¶ 36–41, and that management's performance-related reasons were merely pretext for discrimination, *id.* ¶ 36. Ms. Yuvienco similarly alleges that this same discriminatory treatment was also linked to her Colombian national origin. *Id.* ¶¶ 56–60. She also alleges that she was treated differently, and therefore discriminated against, because of her age. *Id.* ¶¶ 73–77.

On July 13, 2021, Ms. Yuvienco "initiated counseling" with the Department of Agriculture's Equal Employment Opportunity Office. *Id.* ¶ 9. She filed a formal complaint on September 6, 2021. *Id.* ¶ 10. On July 12, 2022, Ms. Yuvienco filed a hearing request with the Equal Employment Opportunity Commission ("EEOC"). *Id.* On October 24, 2022, an EEOC "Administrative Law Judge issued a Decision Without a Hearing, finding that Plaintiff failed to raise any genuine issues of material fact to require an evidentiary hearing on her claims of discrimination." *Id.* ¶ 12. That same day, the Agency issued a Final Order implementing that summary judgment order. *See id.* ¶ 13.

Ms. Yuvienco filed this complaint on January 23, 2023, bringing claims under Title VII of the Civil Rights Act of 1964 for employment discrimination on the basis of race (Count One) and national origin (Count Two), *id.* ¶¶ 26–63, as well as a Title VII hostile work environment claim based on her race, national origin, and age (Count Four), *id.* ¶¶ 81–96.[3] She also brings a

---

[3] Ms. Yuvienco originally brought a Title VII claim for retaliation based on protected EEO activity. *See id.* ¶¶ 97–110 (Count V). In response to the Secretary's argument that this claim should be dismissed, Ms. Yuvienco has withdrawn her retaliation cause of action, Pl.'s Opp'n at 13, ECF No. 7, and the Court will not discuss it further, *see Langley v. Napolitano*, 677

claim for employment discrimination on the basis of age, pursuant to the ADEA (Count III). *Id.* ¶¶ 64–80. The Secretary has moved to dismiss. Def.'s Mot. Dismiss, ECF No. 5; Def's. Mem. Supp. Mot. Dismiss ("Def.'s Mem."), ECF No. 5-1. The motion is fully briefed and ripe for decision. *See* Pl.'s Opp'n, ECF No. 7; Def.'s Reply, ECF No. 8.

### III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint" by asking whether the plaintiff has properly stated a claim for which relief can be granted. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In considering such a motion, the complaint must be construed "liberally in the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged . . . ." *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). But a court may disregard "inferences drawn by a plaintiff if such inferences are unsupported by the facts set out in the complaint." *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (quoting *Kowal*, 16 F.3d at 1276).

Thus, although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss. *Id.* Similarly, there is no obligation to accept plaintiff's legal conclusions as true, nor to presume the truth of legal conclusions that are

---

F. Supp. 2d 261, 263 (D.D.C. 2010) ("Plaintiff has voluntarily withdrawn her claim of reprisal, thereby rendering the Secretary's motion moot as to that issue[.]").

couched as factual allegations. *See Twombly*, 550 U.S. at 555. Finally, the Court may consider "any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). That includes EEO filings with respect to exhaustion of claims. *See Williams v. Chu*, 641 F. Supp. 2d 31, 35 (D.D.C. 2009); *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 120 n.2 (D.D.C. 2011) (considering the charge of discrimination and letter of determination).

## IV.  ANALYSIS

All of Ms. Yuvienco's claims are predicated on the same vague and conclusory allegations, and she makes little connection between her employment issues and her race, national origin, or age. Because Ms. Yuvienco falls short of the pleading standard, the Court will grant the motion to dismiss in full.

### A.  Ms. Yuvienco's Race and National Origin Discrimination Claims Fail

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). When a protected characteristic is at issue, Title VII's anti-discrimination provision is "capacious" and "[o]nce it has been established that an employer has discriminated against an employee with respect to that employee's 'terms, conditions, or privileges of employment' because of a protected characteristic, the analysis is complete." *Chambers v. District of Columbia*, 35 F.4th 870, 874–75 (D.C. Cir. 2022). Therefore, after *Chambers*, a plaintiff no longer need show "objectively tangible harm" to sustain a Title VII

discrimination claim. *Id.* (overruling *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999)). Still, "the phrase [terms, conditions, or privileges of employment] is not without limits" because "not everything that happens at the workplace affects an employee's 'terms, conditions, or privileges of employment[.]'" *Id.* at 874. Examples of actions that meet this test include, but are not limited to, transferring an employee to a new position, firing an employee, or decreasing an employee's pay. *See id.*

Although the "initial burden" of pleading Title VII's "because of" element is "not onerous," a plaintiff cannot survive a motion to dismiss by providing "threadbare" or conclusory allegations of discrimination; nor can a plaintiff state a claim "merely [by] invok[ing] [her] race [or national origin], in the course of a claim's narrative." *See Doe #1 v. Am. Fed'n of Gov't Emps.*, 554 F. Supp. 3d 75, 102–103 (D.D.C. 2021) (cleaned up) (addressing a claim under 42 U.S.C. § 1981 but noting that the same framework governs § 1981 and Title VII claims and "rely[ing] on case law interpreting section 1981 and Title VII . . . ."). Instead, a plaintiff must "plead[] sufficient facts to demonstrate that [s]he is entitled to an inference of discrimination based on disparate treatment." *Massaquoi v. District of Columbia*, 81 F. Supp. 3d 44, 49 (D.D.C. 2015). A plaintiff can plead an inference of discrimination with "direct evidence of . . . animus" against the protected class or by pointing to a "similarly situated comparator" outside the protected group. *Burton v. District of Columbia*, 153 F. Supp. 3d 13, 66, 72 (D.D.C. 2015).

Here, Ms. Yuvienco has not pleaded facts that support an inference that she suffered discrimination. She offers only conclusory allegations about disparate treatment that are mere "legal conclusions couched at factual allegations." *Nurriddin*, 818 F.3d at 756. Indeed, while Ms. Yuvienco alleges that she "was treated differently and subjected to disparate treatment in

6

comparison to non-Black employees" and that she "has been treated differently and subjected to different terms and conditions of her employment due to her national origin (Colombian)," Compl. ¶¶ 27, 34, 39–41, 46, 53, 56–60, these are the exact types of allegations that, standing alone, fail to state a claim. *See Keith v. U.S. Gov't Accountability Off.*, No. 21-cv-2010, 2022 WL 3715776, at *3 (D.D.C. Aug. 29, 2022) (finding that allegation that "Plaintiff has been treated differently and subjected to different terms and conditions of her employment due to her race" is conclusory and cannot state a claim). Beyond those conclusory statements, there are no factual allegations that Ms. Yuvienco's supervisors held or expressed animus against her based on her race or national origin, or for that matter, any factual allegations at all concerning how Ms. Yuvienco's race and national origin factored into her employment. *See generally* Compl.

To the extent that Ms. Yuvienco seeks to plead her claim by comparison to a co-worker, she also fails. While she alleges that her white co-worker "performed poorly" but "was not placed on a Demonstration Opportunity period," *Id.* ¶¶ 24, 32, 51, she does not plead sufficient details to show that this co-worker was a "similarly situated comparator." *Burton*, 153 F. Supp. 3d. at 66. Ms. Yuvienco alleges no details about the co-worker's job title, how this co-worker's responsibilities compared to hers, and whether she and the co-worker reported to the same supervisors. *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999) (finding that a plaintiff is similarly situated to another individual if "all of the relevant aspects of [the plaintiff's] employment situation [are] 'nearly identical' to those of the [comparator].") (quoting *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995)) (internal quotation marks omitted). Ms. Yuvienco has also not alleged any details to show how the co-worker's performance was poor, or how it compared to her own performance. She thus cannot base her discrimination claim on her conclusory allegations about this purported comparator. *See Keith*,

2022 WL 3715776 at *3 ("[Plaintiff] must allege some facts to ground a reasonable inference that the plaintiff was in fact similarly situated to comparator employees.").

Lastly, Ms. Yuvienco also alleges that she suffered a "constructive discharge" connected to her race and national origin. Compl. ¶¶ 34, 53. To plead a constructive discharge, she must allege facts that would show "that (1) intentional discrimination existed, (2) the employer deliberately made working conditions intolerable, and (3) aggravating factors justified the plaintiff's conclusion that she had no option but to end her employment."[4] *Douglas-Slade v. LaHood*, 793 F. Supp. 2d 82, 102 (D.D.C. 2011). Again, while she pleads that she was "regularly and continually subjected to harassing conduct that included being subjected to improper discipline, accused of poor performance, delay of leave requests, and unfair assignment of work," Compl. ¶ 87, there are no factual allegations to connect any of this alleged conduct to her race and national origin.[5] All the Court can gather is that Ms. Yuvienco is Black and Colombian, her supervisors and at least one co-worker were not, and those supervisors accused her of poor performance and took other unfair administrative actions.[6] That is not enough to support her otherwise conclusory allegations and therefore not enough to state a claim. *See*

---

[4] The issue is not directly presented but "there is some disagreement in this district as to whether constructive discharge can be a standalone cause of action." *Watkins v. Washington Metro. Area Transit Auth.*, No. 13-cv-0963, 2023 WL 2734324, at *10 (D.D.C. Mar. 31, 2023); *see also Gritz v. Garland*, No. 18-cv-02712, 2023 WL 4105182, at *6 (D.D.C. June 21, 2023) (finding that "in light of" the Supreme Court's decision in *Green v. Brennan*, 578 U.S. 547 (2016), "constructive discharge can stand on its own as a theory of liability under Title VII.").

[5] As the Secretary argues, Def.'s Mem. at 7–9, even if Ms. Yuvienco had pleaded facts connecting these allegations to her race and national origin, she would likely still not meet the standard for pleading constructive discharge. She has not alleged any details to suggest her workplace was so intolerable that she was constructively discharged. *See, e.g., Lewis v. District of Columbia*, 653 F. Supp. 2d 64, 82 (D.D.C. 2009) ("The absence of any of [sic] evidence of extreme mistreatment is likewise fatal to the plaintiff's constructive discharge claim.").

[6] The complaint does not allege the national origin of the alleged comparator, although the Court surmises that it is unlikely this individual is also Colombian. *See* Compl. ¶ 24.

8

*Iqbal*, 556 U.S. at 678 (holding that to survive a motion to dismiss, a plaintiff must make more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]"). Because of the deficiencies in the sparsely alleged complaint, the Court will dismiss Ms. Yuvienco's claims for race and national origin discrimination (Counts I and II). The Court need not resolve the Secretary's other arguments for why these claims should fail.[7]

### B. Ms. Yuvienco's Age Discrimination Claim Fails

Ms. Yuvienco's age discrimination claim fares no better than her race and national origin discrimination claims. The D.C. Circuit has long analyzed claims under the ADEA in parallel with claims under Title VII. *See, e.g., Baloch v. Kempthorne*, 550 F.3d 1191, 1196–97 (D.C. Cir. 2008); *Drielak v. Pruitt*, 890 F.3d 297, 300 (D.C. Cir. 2018). After *Chambers,* the D.C. Circuit has not spoken to whether the ADEA should continue to be interpreted in line with Title VII, which would mean that courts reviewing ADEA claims should dispense with the "objectively tangible harm" requirement in favor of the new broader "terms, conditions, or privileges of employment" test. *Chambers,* 35 F.4th at 874–75. Amid that uncertainty, the

---

[7] Most significantly, the Secretary argues that *Chambers* does not apply here because Ms. Yuvienco is a federal employee and thus cannot support her Title VII disparate treatment claims on any employment actions that do not constitute "personnel actions" under the Civil Service Reform Act, 5 U.S.C. § 2302(a)(1)(2)(A)). *See* Def.'s Mem. at 4–7. According to the Secretary, Ms. Yuvienco's Letters of Instruction and Demonstration Opportunity period would fail to meet this definition. *Id.* Many courts in this Circuit have encountered and rejected this argument that *Chambers* should not apply to federal employees and instead be limited to private-sector Title VII suits. *See Cameron v. Blinken,* No. 22-cv-0031, 2023 WL 5517368, at *4 (D.D.C. Mar. 22, 2023); *see also Bain v. Off. of Att'y Gen.*, 648 F. Supp. 3d 19, 54 (D.D.C. 2022); *Garza v. Blinken*, No. 21-cv-02770, 2023 WL 2239352, at *5 (D.D.C. Feb. 27, 2023); *Baldwin v. Granholm,* No. 21-cv-2646 (ZMF), 2023 WL 2726440, at *6 n.6 (D.D.C. Mar. 31, 2023) (order vacated due to clerical mistake).

The Court will also not address the Secretary's argument that even if *Chambers* does apply to federal employees, the Letters of Instruction and Demonstration Opportunity period would be an insufficient change in the "terms and conditions" of Ms. Yuvienco's employment to state a claim. *See* Def.'s Reply at 2–3.

courts that have confronted this question have reached different conclusions. *Compare Bain v. Off. of Att'y Gen.*, 648 F. Supp. 3d 19, 51–52 (D.D.C. 2022) (concluding that applying *Chambers* to the ADEA is the better approach given the ADEA's textual similarity with Title VII and the D.C. Circuit's longstanding practice of interpreting the statutes in parallel) *with Blackmon v. Garland*, No. 21-cv-0034, 2022 WL 4130815, at *11 n.9 (D.D.C. Sept. 12, 2022) (holding that *Chambers* should not apply to the ADEA because "controlling precedent in this jurisdiction still requires plaintiffs bringing suit under the ADEA to show an 'objectively tangible harm.'") (quoting *Drielak*, 890 F.3d at 300).

Nonetheless, there is no need to resolve that question here because Ms. Yuvienco fails to sufficiently allege that any actions taken against her were because of her age. *See Baloch*, 550 F.3d at 1196–97 (stating that under the ADEA "the two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's . . . age . . . ."). Just like her Title VII discrimination claim, Ms. Yuvienco provides nothing more than conclusory statements that she "has been treated differently and subjected to different terms and conditions of her employment due to her age (56)." Compl. ¶ 74. While Ms. Yuvienco was older than her supervisors, there are no factual allegations that indicate that her age played a role in how those supervisors treated her. *See id.* ¶¶ 17–19 (listing ages of her supervisors).

Much as with her race and national origin claims, Ms. Yuvienco alleges that she "was treated differently and subjected to disparate treatment in comparison to younger employees that Defendant employed." *Id.* ¶ 65. But this attempt to establish a comparator is even more lacking than her previous try: there are no details about the identity of those younger employees and no basis on which to compare them to Ms. Yuvienco. *See Doe #1*, 554 F. Supp. 3d at 103 ("A

plaintiff's assertion that she is similarly situated to others is just a legal conclusion—and a legal conclusion is never enough to state a claim.") (citation omitted and cleaned up).  Because Ms. Yuvienco's allegations do not support an inference that she suffered age discrimination, the Court dismisses Count III.

### C. Ms. Yuvienco's Hostile Work Environment Claim Fails

For several reasons, Ms. Yuvienco has not adequately pleaded a hostile work environment claim.  To demonstrate a hostile work environment, "a plaintiff must show that [her] employer subjected [her] to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Baloch*, 550 F.3d at 1201 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  "Determining whether an actionable hostile environment claim exists requires an examination of all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 103 (2002).  "Importantly, the plaintiff must establish that the allegedly harassing conduct complained of was based on a protected characteristic . . . ." *Byrd v. Vilsack*, 931 F. Supp. 2d 27, 45 (D.D.C. 2013) (citation omitted).

That last point is critical, because as this Court has already explained, Ms. Yuvienco has not plausibly connected any of the actions taken against her to her race, national origin, or age.[8]

---

[8] Ms. Yuvienco pleads her hostile work environment claim under Title VII, which covers race and national origin as protected characteristics, but not age.  *See* Compl. ¶¶ 81–96.  If the Court were to construe Ms. Yuvienco's claim under the ADEA, "[n]either the D.C. Circuit nor the Supreme Court has yet [to] decide[ ] whether 'a hostile work environment claim can be brought under the ADEA . . . .'" *Mohmand v. Broad. Bd. of Governors*, No. 17-cv-618, 2018 WL 4705800, at *6 (D.D.C. Sept. 30, 2018) (quoting *Ware v. Hyatt Corp.*, 80 F. Supp. 3d 218, 227 (D.D.C. 2015)).  But, "assuming it can be, 'the same standard [as discussed above] would

Although Ms. Yuvienco alleges that she "believes that she was subjected to a hostile work environment based on her Race (Black), National Origin (Colombian) and Age (1958)," Compl. ¶ 88, there are no other factual allegations to support the inference that any of those protected characteristics were at issue in her workplace environment.  Therefore, Ms. Yuvienco's claim cannot go forward, because "hostile behavior . . . cannot support a claim of hostile work environment unless there exists some linkage between the hostile behavior and the plaintiff's membership in a protected class." *Motley–Ivey v. District of Columbia*, 923 F. Supp. 2d 222, 233 (D.D.C. 2013) (quoting *Na'im v. Clinton*, 626 F. Supp. 2d 63, 73 (D.D.C. 2009)) (internal quotation marks omitted).

Moreover, assuming that Ms. Yuvienco *had* sufficiently alleged a linkage to her protected characteristics, "[n]ot all abusive behavior, even when it is motivated by discriminatory animus, is actionable." *Jones v. District of Columbia*, 314 F. Supp. 3d 36, 61 (D.D.C. 2018) (quoting *Stewart v. Evans*, 275 F.3d 1126, 1133 (D.C. Cir. 2002)).  Ms. Yuvienco supports her hostile work environment claim using undetailed allegations that she was inaccurately criticized for poor performance, improperly disciplined, and had her requests for leave delayed.  Compl. ¶¶ 82–87.  Without more information to spell out the gravity of these events, these allegations are insufficiently severe to show a hostile work environment.

While hostile work environment claims depend on the "totality of circumstances," *Baloch*, 550 F.3d at 1201, Plaintiff's allegations resemble those that the Circuit has found insufficient to support a claim.  For example, in *Brooks v. Grundmann*, 748 F.3d 1273, 1276–77 (D.C. Cir. 2014), the plaintiff failed to state a hostile work environment claim based on

---

apply.'" *Id.* (quoting *Ware*, 80 F. Supp. 3d at 227).  Thus, even if these multiple conditional statements are resolved in Ms. Yuvienco's favor, her age-based hostile work environment claim still fails.

12

"selective enforcement of a time and attendance policy," poor performance reviews, and "outbursts" from coworkers, *see also Baloch*, 550 F.3d at 1195, 1200–01 (finding no hostile work environment claim when plaintiff received letters of reprimand and sick leave restrictions and had verbal altercations with supervisor). And at the district level, other courts have also dismissed claims that are akin to Plaintiff's claim. *See Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) (dismissing hostile work environment claim based on "criticisms of [plaintiff's] work" and "removal of important assignments, lowered performance evaluations, and close scrutiny of assignments by management" as well as "denial of leave"); *Harris v. Mayorkas*, No. 21-cv-1083, 2022 WL 3452316, at *16 (D.D.C. Aug. 18, 2022) (dismissing a hostile work environment claim in which plaintiff alleged, among other things, that her supervisors "provid[ed] only negative feedback during evaluations; impos[ed] unreasonable and impossible deadlines; fail[ed] to provide clear communications or timely meet with her to discuss her performance plan for an upcoming year; [and] deni[ed her] leave") (internal quotations omitted). Like in those cases, Plaintiff has not alleged sufficiently "severe or pervasive" conduct to make out a hostile work environment claim. *Baloch*, 550 F.3d at 1201.

Finally, "[u]se of the same discrete acts, upon which the plaintiff bases [her] discrimination . . . claims, to support a hostile work environment claim is disfavored." *Townsend v. United States*, 236 F. Supp. 3d 280, 312 (D.D.C. 2017). "[D]iscrete acts constituting discrimination or retaliation claims . . . are different in kind from a hostile work environment claim . . . ." *Franklin v. Potter*, 600 F. Supp. 2d 38, 77 (D.D.C. 2009) (quoting *Lester v. Natsios*, 290 F. Supp. 2d 11, 33 (D.D.C. 2003)). But "although a plaintiff may not combine discrete acts to form a hostile work environment claim without meeting the required hostile work environment standard, neither can a court dismiss a hostile work environment claim merely

13

because it contains discrete acts that the plaintiff claims (correctly or incorrectly) are actionable on their own." *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011).

Ms. Yuvienco's hostile work environment claim is based on the same conduct as her discrimination claim, including the Letters of Instruction regarding her performance and leave management, the Demonstration Opportunity period, and her being "forced to retire." *See, e.g.*, Compl. ¶¶ 28–32, 47–50, 66–69, 82–85. Even if Ms. Yuvienco had adequately alleged a discrimination claim based on these actions, this duplicative pleading is insufficient for a hostile work environment claim unless Ms. Yuvienco pleaded that she met the required standard of demonstrating that these various actions combine to form a cohesive hostile work environment claim. Although Ms. Yuvienco argues in her opposition that she has met the *Baird*, 662 F.3d at 1252, standard, it is not pleaded in her complaint. Pl.'s Opp'n at 13. Thus, because of these deficiencies, the Court will dismiss Ms. Yuvienco's hostile work environment claim (Count IV).[9]

### D. The Court Grants Ms. Yuvienco's Request for Leave to Amend

Ms. Yuvienco's opposition requests the opportunity to amend her complaint. Pl.'s Opp'n at 13–15. Leave to amend is "freely give[n] [ ] when justice so requires," Fed. R. Civ. P. 15(a)(2). If Ms. Yuvienco wishes to amend her complaint, she shall do so within 30 days, and the Court recommends that any amended complaint should bolster her claims with factual allegations that could support an inference of discrimination.

---

[9] The Court observes that if Ms. Yuvienco plans to continue alleging constructive discharge as one of the adverse actions supporting her discrimination claims, *supra* at 8, she must allege a work environment that is even worse than what is required to successfully plead a hostile work environment claim, *see, e.g.*, *McKeithan v. Boarman*, No. 11-5247, 2012 WL 1450565, at *1 (D.C. Cir. Apr. 12, 2012) (per curiam) ("[T]he district court correctly determined appellant failed to state a claim of constructive discharge, because he failed to make out an underlying predicate claim of hostile work environment.").

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss, ECF No. 5, is **GRANTED,** and Plaintiff's Request to File an Amended Complaint is **GRANTED.**  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: February 22, 2024                                                            RUDOLPH CONTRERAS
                                                                                                        United States District Judge