UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| CLARA YUVIENCO, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 23-186 (RC) |
| | : | | |
| v. | : | Re Document No.: | 14 |
| | : | | |
| TOM VILSACK, | : | | |
| *Secretary of Agriculture*, | : | | |
| | : | | |
| Defendant. | : | | |

## <u>MEMORANDUM OPINION</u>

### GRANTING DEFENDANT'S MOTION TO DISMISS

### I.  INTRODUCTION

Plaintiff Clara Yuvienco sued Tom Vilsack in his official capacity as Secretary of Agriculture, alleging that she experienced employment discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981a on the basis of her race and national origin, age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), and a hostile work environment.  This Court previously granted Defendant's motion to dismiss, finding that Yuvienco's claims were factually deficient but affording her the opportunity to amend her complaint to supplement her factual allegations.  Following that amendment, Defendant moves to dismiss once more.  Because the Court concludes that Yuvienco's claims remain factually deficient, it grants Defendant's renewed motion to dismiss.

### II.  FACTUAL BACKGROUND

The Court assumes familiarity with its prior memorandum opinion and order evaluating Yuvienco's original Complaint.  *See generally* Compl., ECF No. 1; Mem. Op. Granting Def.'s Mot. Dismiss ("Mem. Op."), ECF No. 10; Order Granting Def.'s Mot. Dismiss, ECF No. 9;

*Yuvienco v. Vilsack*, No. 23-cv-186, 2024 WL 727712 (D.D.C. Feb. 22, 2024). In its prior opinion, the Court concluded that Yuvienco's race and national origin discrimination claims were factually deficient, *see* Mem. Op. at 9, that she did not allege that any adverse actions were taken because of her age, *see id.* at 10, that she offered insufficient facts to support the existence of a proper comparator, *see id.* at 10–11, and that her hostile work environment claim was unconnected to her race and not sufficiently severe, *see id.* at 11. The Court nonetheless granted Yuvienco's alternative request to amend her complaint. *See id.* at 14–15.

Yuvienco filed an Amended Complaint on March 25, 2024, which asserts the following facts. *See generally* Am. Compl., ECF No. 11. Yuvienco is a Black woman of Colombian national origin. *Id.* ¶ 9. During the relevant period, she worked as a bilingual Technical Information Specialist at the U.S. Department of Agriculture's Food Safety and Inspection Service. *Id.* ¶ 16. Although she does not state when she started working there, the Amended Complaint indicates that the agency hired her some time before 2014. *Id.* ¶¶ 19–20. Her duties included staffing a "Hotline," and she also "wrote blogs [and] articles, did community outreach, conducted radio and television interviews, updated databases, translated recalls and documents, conducted podcasts, [and] translated and recorded food safety messages." *Id.* ¶ 20.[1]

Yuvienco's factual allegations largely revolve around metrics measuring her responses to Hotline calls.[2] *See id*. ¶¶ 29–48. She alleges that a January 2021 Hotline metrics report showed

---

[1] Yuvienco's Amended Complaint details alleged differences in treatment between her and another staff member, Janice López Muñoz, from 2014–2018. *See* Am. Compl. ¶¶ 20–27. Defendant points out that "Plaintiff does not allege" that these facts "are part of her claims here" and that they are unexhausted. Mot. Dismiss at 19–20, ECF No. 14. Yuvienco does not dispute this characterization. *See generally* Opp'n Mot. Dismiss, ECF No. 16. The Court thus does not summarize those facts here or consider them further.

[2] The Amended Complaint provides no details on what the Hotline actually is, how many people staff the Hotline, or how related duties are assigned. *See generally* Am. Compl.

that she had "the third highest percentage" of responses "on the team" and that "[s]everal team members had a lower number of cases than her." *Id.* ¶ 29.  On July 1, 2021, Yuvienco's supervisor, who she states is Caucasian, "issued [her] a Letter of Instruction ('LOI') . . . alleging that she failed to meet performance expectations." *Id.* ¶ 31.  "The LOI stated that effective immediately, [Yuvienco] would need to achieve at least 25% of the total hotline inquiries per month until the end of the fiscal year.  This requirement was higher than [her] similarly situated colleagues of a different protected class."[3]  *Id.*  On August 19, 2021, supervisors placed Yuvienco on "a Demonstration Opportunity" for thirty days even though she "had handled more Hotline inquiries than any of her teammates." *Id.* ¶ 42.  Yuvienco alleges that she "was forced to retire" in mid-September 2021 due to "management's continued efforts to minimize [her] work, and their continued efforts to assure she did not meet the metric necessary to prove successful performance during the Opportunity period." *Id.* ¶¶ 47–48.

Yuvienco alleges that managers' metrics differed slightly from those she calculated herself.  *Id.* ¶ 34.  When a supervisor issued the initial LOI in June 2021, she alleges that the supervisor's data was incorrect—Yuvienco had responded to 18.54 percent of Hotline requests, not 17.3 percent as the supervisor reported.  *Id.*[4]  Her metrics for the month of June additionally showed that she completed 233 cases, while her own count totaled 243 cases.  *Id.* ¶ 37.  Supervisors then changed the way Yuvienco received her reports, first omitting the names of other staff members and later omitting those staff members' metrics.  *Id.* ¶¶ 38, 40.  She asserts that she was the only employee to experience the latter change in reporting.  *Id.* ¶ 40.  Finally,

---

[3] A supervisor issued Yuvienco an additional LOI on August 4, 2021 "regarding leave management and attendance."  Am. Compl. ¶ 53.

[4] The Amended Complaint additionally asserts that Yuvienco saw Hotline record reports with varying record counts, and that her "metrics for October [2020] were impacted by the total record count change."  Am. Compl. ¶ 35.

Yuvienco alleges that a supervisor reported that she handled a total of 147 cases during August 2021, when she counted 149 cases handled. *Id.* ¶ 45.

The Amended Complaint also presents a potential comparator who allegedly received different treatment from Yuvienco. *See id.* ¶ 35. Yuvienco asserts that another employee named Sandy Stasiak had answered 6 percent of inquiries during October 2020, compared to Yuvienco's 9.8 percent. *Id.* ¶¶ 34–35. Stasiak is white, "much younger than" Yuvienco, also worked as a Technical Information Specialist, "had essentially the same duties as" Yuvienco, and reported to "the same first and second-line supervisors." *Id.* ¶ 35. "Ms. Stasiak's metrics were consistently much lower than [Ms. Yuvienco]'s every month." *Id.* ¶ 36. Despite this, Stasiak "was not placed on a Demonstration Opportunity period." *Id.* ¶ 43.[5]

Based on these facts, Yuvienco alleges that she experienced employment discrimination on the basis of race and national origin, *see* Am. Compl. ¶¶ 49–86, employment discrimination on the basis of age, *see id.* ¶¶ 87–103, a hostile work environment, *see id.* ¶¶ 104–119, and unlawful retaliation, *see id.* ¶¶ 120–133.

On May 13, 2024, Defendant filed a motion to dismiss the Amended Complaint. *See* Mot. Dismiss, ECF No. 14. Yuvienco opposed the motion, *see* Opp'n Mot. Dismiss, ECF No. 16, and Defendant replied, *see* Reply to Opp'n Mot. Dismiss ("Reply"), ECF No. 17.

### III. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint" by asking whether the plaintiff has properly stated a claim for which

---

[5] The Amended Complaint also asserts that on one occasion, supervisors delayed in approving Yuvienco's leave request, although it was eventually approved. Am. Compl. ¶ 30. She claims that "[s]imilarly situated employees of a different protected class than Plaintiff had their Leave Request approved promptly." *Id.*

4

relief can be granted. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (citing Fed. R. Civ. P. 12(b)(6)). In considering such a motion, the complaint must be construed "liberally in the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged." *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) (citing *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). But a court may disregard "inferences drawn by a plaintiff if such inferences are unsupported by the facts set out in the complaint." *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (cleaned up) (quoting *Kowal*, 16 F.3d at 1276).

Thus, although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss. *Id.* (citing *Twombly*, 550 U.S. at 555). Similarly, there is no obligation to accept plaintiff's legal conclusions as true, nor to presume the truth of legal conclusions that are couched as factual allegations. *See Twombly*, 550 U.S. at 555. Finally, the Court may consider "any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996)). That includes EEO filings with respect to exhaustion of claims. *See Williams v. Chu*, 641 F. Supp. 2d 31, 35 (D.D.C. 2009); *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 120 n.2 (D.D.C. 2011) (considering charge of discrimination and letter of determination).

5

## IV.  ANALYSIS

The Court concludes that Yuvienco's Amended Complaint continues to "make[] little connection between her employment issues and her race [or] national origin."  Mem. Op. at 5.  The only facts that link her treatment to her race or national origin arise from alleged Caucasian comparators, *see* Am. Compl. ¶¶ 22, 35, and the Court finds those comparisons lacking in detail and insufficient to state a plausible claim of unlawful employment discrimination.  The Court additionally concludes that the facts alleged fall short of stating a claim for an unlawful hostile work environment.  As Yuvienco has conceded the remaining ADEA and retaliation claims found in Count Three and Count Five of the Amended Complaint, *see* Opp'n Mot. Dismiss at 13, the Court grants Defendant's motion to dismiss in full.

### A.  Race and National Origin Discrimination Claims

Yuvienco claims that she experienced unlawful employment discrimination in violation of Title VII  and 42 U.S.C. § 1981a because she is Black and of Colombian national origin.  *See* Am. Compl. ¶¶ 49–86.  Defendant moves to dismiss these claims, asserting that Yuvienco fails to plead an adverse employment action or facts indicating that she received workplace discipline because of her protected status.  Mot. Dismiss at 12–20.  Yuvienco does not plead facts showing direct evidence of animus related to her race or national origin, Defendant argues, and she offers no appropriate comparator.  *Id.* at 17–20.  Yuvienco responds that she pleads adverse employment actions, Opp'n Mot. Dismiss at 7–9, that "Ms. Stasiak and other similarly situated coworkers" received different treatment, *id.* at 9, and that Yuvienco was subject to constructive discharge, *id.* at 10–11.  The Court concludes that Yuvienco pleads insufficient facts showing that her employer took actions because of her race or national origin.

As the Court explained in its previous memorandum opinion in this case, *see* Mem. Op. at 6, a plaintiff can demonstrate the existence of employment discrimination through "direct evidence of . . . animus" against the protected class or by pointing to a "similarly situated comparator" outside the protected group. *Burton v. District of Columbia*, 153 F. Supp. 3d 13, 66, 72 (D.D.C. 2015). To present an individual as a comparator, a plaintiff must ultimately "demonstrate that 'all of the relevant aspects of [her] employment situation were nearly identical to those of the [other]' employee." *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015) (quoting *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999)). When determining whether a plaintiff and another employee were similarly situated, courts typically look to "the similarity of the plaintiff's and the putative comparator's jobs and job duties, whether they were disciplined by the same supervisor, and, in cases involving discipline, the similarity of their offenses." *Id.* "Courts often look to the duties attending each employee's position when evaluating whether they are appropriate comparators." *Young v. Perdue*, No. 19-cv-2144, 2024 WL 3967358, at *6 (D.D.C. Aug. 26, 2024) (citing, among others, *Barbour v. Browner*, 181 F.3d 1342, 1345 (D.C. Cir. 1999)). "While no 'numerosity' requirement applies to comparators, such that a 'single comparator' may suffice to support an inference of discrimination, 'the degree of similarity necessary may vary in accordance with the size of the potential comparator pool, as well as to the extent to which the plaintiff cherry-picks would-be comparators.'" *Young*, 2024 WL 3967358, at *6 (quoting *Burton*, 153 F. Supp. 3d at 67).

The Court concludes that Yuvienco alleges insufficient facts to show that Stasiak is a proper comparator for the purposes of her discrimination claims. The Amended Complaint does

allege that the two reported to the same supervisors and carried the same title.[6] Am. Comp. ¶ 35. Yet although the Amended Complaint builds out further factual context regarding Yuvienco's Hotline metrics, it does little to otherwise show that "all of the relevant aspects of [her] employment situation were nearly identical to those of" Stasiak. *Burley*, 801 F.3d at 301. In addition, Yuvienco fails to plead the high degree of similarity necessary to base a disparate treatment claim off of a single comparator.[7] *See Young*, 2024 WL 3967358, at *6.

One key omission is any allegation that the two employees had similar levels of experience, seniority, or grade, such that managers might expect the two to respond to Hotline requests at similar rates. Two employees are not similarly situated if they do not share "seniority of position." *Williams v. Chertoff*, 495 F. Supp. 2d 17, 33 (D.D.C. 2007) (citing *Neuren v. Adduci, Mastriani, Meeks, & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995)). Rather than pleading that Stasiak and Yuvienco possessed similar seniority and experience, the Amended Complaint contains indicia that the two employees were dissimilarly situated. Yuvienco asserts that she had

---

[6] The Court recognized these factual omissions in its prior memorandum opinion. *See* Mem. Op. at 7–8. The Court did not imply that inclusion of these details would be sufficient to state a claim, but rather offered them as examples of typical factual allegations that add plausibility to a discrimination complaint.

[7] Yuvienco attaches several documents from administrative proceedings to her opposition, including a 525-page EEO investigation report, *see* Ex. 4 to Opp'n Mot. Dismiss, ECF No. 16-4, and relies on the report to assert additional facts in that briefing, *see* Opp'n Mot. Dismiss at 12. Defendant seizes on this opportunity to point out that the investigative report shows Stasiak was a recent hire of a lower salary grade, and that Yuvienco's job description required her to respond to at least 20 percent of hotline inquiries while her coworkers' roles did not. *See* Reply at 5. The Court may not consider these facts outside the operative complaint unless it converts the motion to dismiss to one for summary judgment and affords Defendant the opportunity to respond with its own material. *See* Fed. R. Civ. P. 56(d); *Hurd v. D.C., Gov't*, 864 F.3d 671, 687 (D.C. Cir. 2017) ("[A] court that decides to consider extra-pleading material is required to convert the motion to dismiss into one for summary judgment, with attendant procedural protections.").

occupied her role since prior to 2014, Am. Compl. ¶ 20, and that Stasiak was, in contrast, "much younger than Plaintiff," *id.* ¶ 35.

The Amended Complaint additionally fails to provide any details on Stasiak's responsibilities other than the vague assertion that the two had "essentially the same duties." *Id.*; *see also* Mem. Op. at 7 (noting that Yuvienco failed to allege "how this co-worker's responsibilities compared to hers"); *Barbour*, 181 F.3d at 1345 (concluding that a GS-12 employee was not similarly situated to another GS-13 employee because the GS-13 performed several duties that the GS-12 did not). This is particularly problematic here given that Yuvienco's claims hinge entirely on the notion that she and Stasiak were both expected to respond to the same number of Hotline requests. But she does not allege this fact or any other facts that might support such a conclusion. Absent is any assertion that Hotline duties were equally assigned or that Stasiak was expected to spend a similar amount of time on the Hotline. Yuvienco thus does not plead facts indicating that the two were "subject to the same or similar performance standards." *Coats v. DeVos*, 232 F. Supp. 3d 81, 94 (D.D.C. 2017). To the contrary, Yuvienco's allegation that the Hotline represented just one of her many job duties indicates that other staff members similarly had an assortment of duties in addition to the Hotline. *See* Am. Compl. ¶ 20. Without these facts, it is difficult to "isolate the critical independent variable" of discrimination, *Burton*, 153 F. Supp. 3d at 67 (quoting *Hnin v. TOA (USA), LLC*, 751 F.3d 499, 504–505 (7th Cir. 2014)), and move Yuvienco's claims regarding Stasiak from a mere "possibility" to the necessary "plausibility." *Iqbal*, 556 U.S. at 678.

Yuvienco's references to "similarly situated colleagues" who received unspecified different treatment provide no further factual support for her claims. *See* Am. Compl. ¶¶ 27, 30, 31, 63, 82. As the Court previously explained, "[a] plaintiff's assertion that she is similarly

situated to others is just a legal conclusion—and a legal conclusion is never enough to state a claim." Mem. Op. at 10–11 (quoting *Doe #1 v. Am. Fed'n of Gov't Emps.*, 554 F. Supp. 3d 75, 103 (D.D.C. 2021)).  Yuvienco provides no details about these colleagues or facts about their treatment, and thus does not "identify a discrete and focused group of comparators" to support her claim. *Daughtry v. kmG Hauling, Inc.*, No. 20-cv-3361, 2021 WL 4078686, at *7 (D.D.C. Sept. 8, 2021).

Finally, Yuvienco contends that she suffered constructive discharge because of her race and national origin.  Am. Compl. ¶¶ 57, 110; Opp'n Mot. Dismiss at 10–11.  To plead a constructive discharge, she must allege facts "that (1) intentional discrimination existed, (2) the employer deliberately made working conditions intolerable, and (3) aggravating factors justified the plaintiff's conclusion that she had no option but to end her employment." *Douglas-Slade v. LaHood*, 793 F. Supp. 2d 82, 102 (D.D.C. 2011) (quoting *Lewis v. District of Columbia*, 653 F. Supp. 2d 64, 81 (D.D.C. 2009)).  Yuvienco argues that "a reasonable person would have been driven to retire" in her situation because her supervisors made the "work environment untenable" by treating her differently from Stasiak, as well as "den[ying] information about her metrics, den[ying] the opportunity of additional work to improve her metrics, issues with her leave requests, and abrasive conduct on behalf of her managers." Opp'n Mot. Dismiss at 10.  The Court has already determined that Yuvienco fails to allege facts indicating that intentional discrimination existed, rendering her constructive discharge theory non-viable on that basis alone.

The Court additionally concludes that Yuvienco does not plead facts showing intolerable working conditions.  Her allegations surround her supervisors' feedback regarding Hotline metrics and placement on performance improvement plans, which she felt was unfair. *See, e.g.*,

Am. Compl. ¶ 110.  She describes some of these meetings as "intimidating and not meant to assist [her] in reaching the desired metrics of the LOI." *Id.* ¶ 44.  "[C]onstructive discharge . . . requires a finding of discrimination and the existence of certain 'aggravating factors'" beyond "the mere existence of workplace discrimination." *Veitch v. England*, 471 F.3d 124, 130 (D.C. Cir. 2006).  "The kinds of situations where courts have upheld constructive-discharge findings tend to involve extreme mistreatment or thinly veiled (or even overt) threats of termination." *Walden v. Patient-Centered Outcomes Rsch. Inst.*, 177 F. Supp. 3d 336, 346 (D.D.C. 2016) (quoting *Robinson v. Ergo Sols., LLC*, 85 F. Supp. 3d 275, 283 (D.D.C. 2015)).  The D.C. Circuit has observed that issues such as "a change in job duties, a transfer, . . . criticism, pressure from a supervisor, or being ignored by co-workers" will not represent "aggravating factors." *Veitch*, 471 F.3d at 131.  Given this precedent, Yuvienco's claims that supervisors pressured her over approximately two months to increase her Hotline response rate, criticized her performance, and used slightly inaccurate data do not evince the level of extreme mistreatment necessary to support constructive discharge.  *See* Am. Compl. ¶¶ 15–48; *see also Walden*, 177 F. Supp. 3d at 346 (concluding that receiving a negative review and having to conform to a performance improvement plan "are not so harsh that they rise to the level of aggravating factors"); *Manuel v. Potter*, 685 F. Supp. 2d 46, 71 (D.D.C. 2010) (concluding that placement on a performance improvement plan was not an aggravating factor); *Stratton v. Bentley Univ.*, 113 F.4th 25, 40 (1st Cir. 2024) (same).

Because Yuvienco fails to plead facts indicating that her employer took any action based on her race or national origin, the Court grants Defendant's motion to dismiss as to Counts One and Two of the Amended Complaint.  *See* Mot. Dismiss at 8–12; Am. Compl. ¶¶ 49–86.  As

such, the Court need not consider Defendant's argument that Yuvienco fails to plead that she suffered an adverse employment action.  *See* Mot. Dismiss at 13–17.

### B.  Hostile Work Environment Claim

Yuvienco alleges that Defendant created a hostile work environment in violation of Title VII.  *See* Am. Compl. ¶¶ 104–19.  Defendant moves to dismiss this claim, arguing that Yuvienco merely repeats her deficient disparate treatment claims, that the alleged actions are not sufficiently extreme to support a hostile work environment, and that she cannot connect any hostility to her membership in a protected class.  Mot. Dismiss at 20–23.  Yuvienco responds that she alleges facts demonstrating an abusive working environment.  Opp'n Mot. Dismiss at 11–13.  The Court agrees with Defendant that Yuvienco fails to state a hostile work environment claim.

To demonstrate a hostile work environment, "a plaintiff must show that [her] employer subjected [her] to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  "Determining whether an actionable hostile environment claim exists requires an examination of all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 103 (2002) (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)).  "Importantly, the plaintiff must establish that the allegedly harassing conduct complained of was based on a protected characteristic."  *Byrd v. Vilsack*, 931 F. Supp. 2d 27, 45 (D.D.C. 2013) (citing *Davis v. Coastal Int'l Sec., Inc.*, 275 F.3d 1119, 1123 (D.C. Cir. 2002)).

The Court determines that Yuvienco has "not plausibly connected any of the actions taken against her to her race, national origin, or age." Mem. Op. at 11. As the Court previously noted, "hostile behavior . . . cannot support a claim of hostile work environment unless there exists some linkage between the hostile behavior and the plaintiff's membership in a protected class." *Id.* at 12 (quoting *Motley-Ivey v. District of Columbia*, 923 F. Supp. 2d 222, 233 (D.D.C. 2013)). Because Yuvienco does not plead facts that her employer took any action because of her race or national origin, her hostile work environment claim cannot proceed.

The Amended Complaint additionally alleges facts that fail to describe an unlawful hostile work environment. Yuvienco asserts that between early July and mid-September 2021, her supervisors pressured her to increase her Hotline response percentage from approximately 18 percent to 25 percent by issuing her a Letter of Instruction and then placing her on a Demonstration Opportunity.[8] *See* Am. Compl. ¶¶ 31, 34. She also alleges that some of the meetings she had with supervisors were "intimidating," *id.* ¶ 44, and that she disagreed with the statistics to which her supervisors referred, *id.* ¶¶ 32–34. Yet "'[c]riticisms of . . . work and expressions of disapproval (even loud expressions of disapproval)' are not sufficiently severe to constitute a hostile work environment." *Brooks v. Grundmann*, 851 F. Supp. 2d 1, 7 (D.D.C. 2012) *aff'd*, 748 F.3d 1273 (D.C. Cir. 2014) (quoting *Singh v. U.S. House of Representatives*, 300 F. Supp. 2d 48, 56 (D.D.C. 2004)). Courts in this Circuit have repeatedly held that placement on a performance improvement plan, even where feedback is distorted, does not arise

---

[8] In her opposition to the motion to dismiss, Yuvienco relies on the EEO investigation report to assert additional facts to support the existence of a hostile work environment. *See* Opp'n Mot. Dismiss at 12. It is well established that a party may not amend her complaint through a brief in opposition to a motion to dismiss. *See Pappas v. Dist. Columbia*, 513 F. Supp. 3d 64, 81 n.5 (D.D.C. 2021). Even if the Court were to incorporate these additional facts into its analysis, they would nonetheless fail to push the allegations into the realm of a hostile work environment.

to a hostile work environment. *See Harris v. Mayorkas*, No. 21-cv-1083, 2022 WL 3452316, at *16 (D.D.C. Aug. 18, 2022); *Walden,* 177 F. Supp. 3d at 345; *Munro v. LaHood*, 839 F. Supp. 2d 354, 366 (D.D.C. 2012); *see also Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) (dismissing Title VII hostile work environment claims premised on "disparaging remarks, criticisms of [plaintiff's] work, and other negative comments"). These sorts of "work-related actions by supervisors" generally "[cannot] be characterized as sufficiently intimidating or offensive in an ordinary workplace context." *Harris*, 2022 WL 3452316, at *16 (citations omitted). The Court thus concludes that the facts alleged are not "sufficiently severe or pervasive to alter the conditions of [Yuvienco's] employment and create an abusive working environment." *Baloch*, 550 F.3d at 1201 (quoting *Harris*, 510 U.S. at 21). As Yuvienco fails to state a claim for a hostile work environment, the Court dismisses Count Four of the Amended Complaint.

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  December 3, 2024                                             RUDOLPH CONTRERAS
                                                                                                   United States District Judge